# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>   *Plaintiff*, | No. |
| v. | |
| $29,000.00 IN UNITED STATES CURRENCY<br>   *Defendant*. | |
| | December 3, 2019 |
| [CLAIMANT:  CARLOS REIS] | |

## VERIFIED COMPLAINT OF FORFEITURE

Now comes the Plaintiff, the United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and David C. Nelson, Assistant United States Attorney, and respectfully states:

1. This is a civil action *in rem* brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A) for the forfeiture of property involved in a financial transaction in violation of 18 U.S.C. §§ 1956 and 1960.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.

3. Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395.

4. The Defendant is $29,000.00 in United States Currency ("Defendant Currency").

5. The Defendant Currency is located within the jurisdiction of the Court.

6. On September 5, 2019, Carlos Reis submitted an administrative claim of ownership to the Defendant Currency.

**Background of Investigation**

7. On July 12, 2019, at or around 4:10 pm, an individual named Carlos Reis ("Reis") went through a pre-flight security scan at Bradley International Airport in Windsor Locks, CT.

8. During this scan, Transportation Security Administration ("TSA") personnel identified anomalies in Reis' groin, buttocks, and leg areas.

9. TSA personnel asked him if he had anything in his pockets and to remove any items from his pockets.

10. Reis, who understood English, appeared nervous and took out his wallet and multiple envelopes that were determined to be filled with currency.

11. Reis stated that he had approximately $20,000 in U.S. currency. Reis denied having anything else in his pockets.

12. TSA personnel then began to pat down Reis. During the pat down, TSA personnel observed that Reis was wearing two pairs of pants (hereinafter referred to as the "inner" and "outer" pants) and that there were additional items contained in Reis' rear/buttocks area.

13. Reis was again asked if he had anything else in his pockets. He denied having anything else. Additional TSA personnel then questioned Reis on whether he had anything in his pockets. At this point, Reis stated that he had more currency within his inner pants. Reis was then taken to a private area of the airport, at which point Reis removed more currency from his inner pants.

14. Reis told law enforcement that he had more currency in his bag. He explained that he was from Brazil, he was in the United States to buy items for his company, and that he

exchanged the currency when he came to the United States. Reis said he had approximately $30,000 to $40,000 in his possession.

15. The currency within Reis' bag was located, inter alia, in a series of envelopes inside a box of medication.

16. Law enforcement observed that Reis' ability to speak English seemingly decreased as the examination progressed.

17. Law enforcement then conducted a consensual interview of Reis with the assistance of a Portuguese translator.

18. During the interview, by way of example, Reis made the following statements:

   a. Reis claimed that he could not remember his full phone number.

   b. Reis stated that he had been in the United States for approximately two months.

   c. Reis stated that he was a university professor and also a civil engineer for a mining company.

   d. Reis explained that he was operating a money exchange system, which was being operated outside of the formal financial system, in which money, goods, or services are exchanged between people in Brazil and the United States.

   e. Reis explained that a friend wanted to send money to Brazil and convert that money from U.S. Dollars to Brazilian Reals. Reis explained, in substance, that Western Union places restrictions on the amount of money that can be sent in an exchange, so Reis had looked for alternatives.

   f. Reis explained, in substance, that if Person A, located in the United States, needed to send currency to Person C, located in Brazil, and Person B was traveling to Brazil, then Person A could give Person B the currency while they were still in

      the United States.  Person B would then take the currency to Brazil and, after arriving in Brazil, would give the currency to Person C.

    g.  Reis explained that he was traveling to Los Angeles to invest in real estate and was carrying the currency because he could not have a bank account in the United States.

    h.  Reis explained that the currency in his possession was from a friend.  He could not initially recall the name of the friend, nor did he have a receipt from this person.  He later stated that this friend was really a friend of a friend named "Bela."  He did not know Bela's last name or phone number.  Reis also said that he has known Bela for four months.

    i.  Reis stated that he had been stopped once before in Brazil for attempting to bring money out of Brazil into the United States.

    j.  Reis told law enforcement that it was fair to say that he was working to exchange money in order to avoid paying taxes and fees, as well as not being allowed to travel with large sums of money.  Reis also admitted that he did not own or operate a licensed money transmitting business.

    k.  Reis denied that any of the currency had been in contact with narcotics.

19.  Law enforcement utilized a trained law enforcement narcotics detection canine to inspect the currency.  The law enforcement canine alerted, i.e., detected, to the presence of narcotics on the currency.

20.  Based upon Homeland Security Investigations ("HSI") Special Agent ("SA") Goodwin's training and experience, wearing 2 pairs of pants (the inner and outer pants) and

concealing currency within both of those pants is a tactic commonly used by smugglers of illicit goods including bulk cash smugglers.

21. Furthermore, based upon HSI SA Goodwin's training and experience, those involved in the smuggling of illicit goods on their person tend to reveal the presence of those items in stages when caught, admitting to the presence of only a portion of those goods at a time in the hopes that the inquiring Agent or Officer will stop questioning once the initial portion of those goods is discovered.

22. Law enforcement seized Reis' currency based on Reis' method of concealment, observations that he appeared nervous, his statements made during the interview, including the various inconsistencies in his statements, and, including but not limited to, the above insights based on the training and experience of HSI SA Goodwin.

23. Based on the above information, it is believed that the $29,000.00 in United States Currency constitutes property involved in a transaction or attempted transaction of an unlicensed money transmitting business in violation of 18 U.S.C. §§ 981, 1956 and 1960; and, therefore, is subject to forfeiture.

WHEREFORE, the United States of America prays that a Warrant of Arrest In Rem be issued for $29,000.00 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

/s/ John B. Hughes
John B. Hughes
Chief, Civil Division
Assistant U. S. Attorney

/s/ David C. Nelson
David C. Nelson (ct25640)
Assistant U.S. Attorney
157 Church Street, 25th Floor
New Haven, CT 06510
Tel.   (203) 821-3700
Fax    (203) 773-5373
David.C.Nelson@usdoj.gov

## DECLARATION

I am a Special Agent with the United States Department of Homeland Security, and I am the case agent assigned the responsibility for this case.

I have read the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of December, 2019.


                                              */s/ Geoffrey Goodwin*
                                              Geoffrey Goodwin
                                              Special Agent
                                              U.S. Department of Homeland Security